UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gerald D. Dawson

        Plaintiff,  **MEMORANDUM OPINION AND ORDER**

v.  Civil No. 10-2641 ADM/JJK

Northwestern Mutual Life Insurance Company,

        Defendant.

___

Douglas A. Boese, Esq., Dunlap & Seeger, PA, Rochester, MN, on behalf of Plaintiff.

Erik T. Salveson, Esq., Benjamin J. Rolf, Esq., and Katie M. Connolly, Esq., Nilan Johnson Lewis PA, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On October 6, 2011, the undersigned United States District Judge heard oral argument on Defendant Northwestern Mutual Life Insurance Company's ("Northwestern") Motion for Summary Judgment [Docket No. 8]. Plaintiff Gerald D. Dawson ("Dawson") opposes the motion. For the reasons stated below, Northwestern's Motion for Summary Judgment is granted.

## II. BACKGROUND[1]

Dr. Dawson worked as a general practice physician in Iowa from 1976 to 1993. Salveson Aff. [Docket No. 13] Ex. A, May 6, 2011 Dawson Deposition ("Dawson Dep.") 16:23–24:1. In 1981, Dawson purchased a disability income policy with Northwestern (the "Northwestern Policy"). Salveson Aff. Ex. D at 1. Dawson left his practice in Iowa to work as an emergency

___

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

room physician in Ely, Minnesota, from 1993 until March 1999.  Dawson Dep. 23:21–24:14.

Dawson was able to perform all his job duties from 1976 to 1999.  Id. 24:19, 29:10–30:3.

Dawson voluntarily quit his position in Ely to move to Rochester, Minnesota.  Id. 32:1–34:1.

Dawson alleges he became totally disabled on March 1, 2000.  Id. 34:23-25.  He was unemployed after leaving Ely until 2001.

In 2001, Dawson worked briefly as a physician performing insurance physicals, voluntarily leaving his job after performing five physicals.  Id. 33:17–36:8.  Between 2001 and 2003, Dawson applied for several jobs but was not hired because he was either not board-certified or he was unable to get medical malpractice insurance.  Id. 48:19–4917; Salveson Aff. Ex. B, June 24, 2011 Dawson Deposition ("2d. Dawson Dep.") 19:2-16, 34:9-18.  On April 30, 2003, Dawson voluntarily let his medical license lapse.  2d. Dawson Dep. 65:2–66:5.  Since that time, Dawson has worked as a self-employed antique dealer, and for a few months in 2005 he worked as an assembler at IBM.  Id. 38:8-19, 49:10–50:9.

Dawson has suffered from depression all of his life, and he has had a familial hand tremor since the 1960s.  Dawson Dep. 75:4-23, 106:11-19.  During medical school he started abusing alcohol; his worst period of drinking was from 1985-1989.  Id. 123:3–124:11.  Dawson has been diagnosed with mild to moderate depression, and he underwent treatment for chemical dependency and depression in 1999.  Id. 108:13-17, 125:15-22.  Dawson has not sought nor received medical treatment for his hand tremor.  Id. 81:13-24.[2]

---

[2]On September 15, 2011, Dawson and Dr. Palmen both submitted affidavits regarding the extent of Dawson's disability.  Dawson Aff. [Docket No. 17], Palmen Aff. [Docket No. 18]. Discovery closed in this case on July 1, 2011.  See Pretrial Scheduling Order [Docket No. 7] 1. Northwestern argues that the late-filed affidavits are sham affidavits and should not be adopted for the Court's ruling.  The affidavits, even if considered, do not create a genuine issue of material fact and do not change the Court's analysis.

The Northwestern policy defines total disability as "incapacity . . . caused by accident or sickness, to engage in an occupation." Salveson Aff. Ex. D ("Disability Policy") § 1.1(b). The term "occupation" is defined as the insured's occupation at the time the disability began. Id. The policy requires that a written notice of a claim be given within sixty days or as soon as reasonably possible. Id. § 4.1. Additionally, the policy requires written proof of disability be given to Northwestern within ninety days except when not reasonably possible, but proof must be given "not later than one year from the time proof is otherwise required except in the absence of legal capacity." Id. § 4.3.

Dawson alleges his disability began on March 1, 2000, and he filed for disability in July 2007. See Notice of Removal [Docket No. 1] Ex. 1 ("Complaint") 2, ¶ 3. On June 23, 2008, Northwestern denied Dawson's disability claim, Salveson Aff. Ex. F-8, and on June 1, 2010, Dawson filed this suit. See Complaint.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Interpreting insurance contracts is a question of law, and on summary judgment the court

may properly decide insurance contract construction issues.  See Horizon III Real Estate v. Hartford Fire Ins. Co., 186 F. Supp. 2d 1000, 1004 (D. Minn. 2002).  In interpreting insurance contracts, unambiguous language must be given its plain and ordinary meaning.  St. Paul Fire & Marine Ins. Co. v. Futura Coatings, Inc., 993 F. Supp. 1258, 1261 (D. Minn. 1998).

### B. Dawson's Disability Claim Fails as a Matter of Law

Dawson seeks benefits under the Northwestern Policy due to a total disability resulting from a familial hand tremor, depression, and alcohol abuse.  See Mem. in Opp'n to Mot. for Summ. J. [Docket No. 15].  No genuine issue of material fact exists, and Northwestern is entitled to judgment as a matter of law because Dawson's claim was untimely and his disabilities are not covered by the Northwestern Policy.

#### 1. Dawson's Disability Claim is Untimely

Notice and proof-of-loss provisions in insurance policies are enforced in Minnesota unless unreasonable.  See generally Ryan v. ITT Life Ins. Corp., 450 N.W.2d 126, 130 (Minn. 1990).  Although insurance contract provisions are generally construed liberally in favor of the insured and strictly against the insurer, clear and unambiguous policy provisions should be given a literal interpretation.  Sterling State Bank v. Virginia Surety Co., 173 N.W.2d 342, 346 (Minn. 1969).

Failure to give timely notice has not always proved fatal to insurance claims where the insurer was not prejudiced.  Ryan, 450 N.W.2d at 130 (citing Reliance Ins. v. St. Paul Ins. Co., 239 N.W.2d 922, 924–25 (Minn. 1976)); but see Walker v. UNUM Provident Corp., No. 01-1795, 2002 U.S. Dist. LEXIS 21647, at *9 (D. Minn. Oct. 25, 2002) (strictly construing insurance policy's one-year proof-of-disability deadline where plaintiff submitted disability claim seven years after start of alleged disability).  However, "in some cases [] an extraordinary

length of time between an event and notification [could be] prejudicial in itself." Reliance, 239 N.W.2d at 925.  Where the insured fails "to do anything which can be construed as complying with the [proof-of-disability] provision's spirit and purpose," that claim is barred because the insurer is prejudiced by having no opportunity to "investigate the claim while the evidence pertaining to it remains fresh and accessible."  Mitchell v. Equitable Life Assurance Soc'y, 245 N.W.2d 618, 620–21 (Minn. 1976).  The principle behind enforcing proof-of-disability requirements is similar to the doctrine of laches – a party should not benefit personally and prejudice another by unreasonably delaying assertion of its rights.  Id. at 621.

Dawson has provided no reason for his seven-year delay in filing for disability benefits, but instead contends that Northwestern has failed to establish that it was prejudiced by that delay.  Mem. in Opp'n to Mot. for Summ. J. [Docket No. 15] 5–7.  Dawson argues that, despite the seven-year delay, Northwestern has been able to review all medical records, depose him about his condition and treatments, and conduct a medical exam.  Id. at 7.  Northwestern argues prejudice occasioned by its inability to conduct a contemporaneous claim investigation or to interview Dawson and other witnesses "when their memories were fresh."  Reply Mem. In Supp. of Mot. [Docket No. 20] 2.

Dawson's seven-year delay in filing for disability benefits, six years after the unambiguous contractual deadline for filing a proof-of-disability claim, was prejudicial and therefore bars his claim.  Northwestern's notice provision states that "[w]ritten notice of claim must be given to [Northwestern] within 60 days . . . [or] as soon as reasonably possible," Disability Policy § 4.1, and Dawson has posited no reason why it was not reasonably possible for him to file his claim for seven years.  More importantly, Northwestern's deadline for proof of

disability clearly requires that "proof must be given not later than one year . . . except in the absence of legal capacity." Id. § 4.3. Dawson has not alleged that he lacked legal capacity to file proof of disability within one year of March 1, 2000. Finally, the Disability Policy barred any action at law from being "brought after three years . . . from the time such proof is required to be given." Id. § 4.7. Nevertheless, Dawson's current action was filed in 2010, more than six years after the contractual deadlines for legal actions. As in Mitchell, Northwestern was unable to conduct timely investigations of Dawson's familial hand tremor, depression, and alcohol abuse due to the seven-year delay. 245 N.W.2d at 621. Due to the untimely filing of his disability claim and the resulting prejudice to Northwestern, Dawson's claim fails as a matter of law on this basis alone.

### 2. Dawson's Claimed Disabilities Are Not Covered by the Northwestern Policy

Minnesota law regarding determinations of total disability does not require absolute physical inability to engage in any kind of occupational task. See Lobdill v. Laboring Men's Mut. Aid Ass'n, 71 N.W. 696, 697 (Minn. 1897). Conversely, inability to perform some occupational tasks does not "rise to the level of total disability." Ryan, 450 N.W.2d at 130 (citing Lobdill, 71 N.W. 696, 697). Total disability is the "inability to perform the substantial and material parts of one's occupation in the customary and usual manner and with substantial continuity." Ryan, 450 N.W.2d at 130 (citations omitted).

Dawson's argument is that his alcohol abuse, depression, and hand tremor cumulatively constitute a total disability to perform his occupation as an emergency room physician. Northwestern contends that Dawson's health issues are not totally disabling because (1) he was unemployed when they began, (2) they are not the cause of any disability, and (3) he has been

6

able to engage in his chosen occupation.

Under the Disability Policy, total disability is defined as "incapacity . . . caused by accident or sickness, to engage in an occupation." Disability Policy § 1.1(b). "Occupation" is defined in the policy as "the occupation of the Insured at the time the disability began." Id. In March 1999, Dawson voluntarily left his position as emergency room physician in Ely. Dawson Dep. 26, 29. In the year from the time he quit his position in Ely to the start of his claimed disability in March 2000, Dawson remained unemployed. Id. 32:1–34:1. Because Dawson was unemployed when his claimed disability began, his hand tremor, alcohol abuse, and depression do not constitute "total disability" under the plain language of the Disability Policy. These conditions did not render him incapable of performing a then-present occupation.

Further, the record shows that Dawson's claimed disability was not an accident or sickness. The terms of the Disability Policy specify that total disability must be caused by "accident or sickness." Disability Policy § 1.1(b). None of Dawson's claimed disabilities have recently occurred; rather, all of them have persisted throughout his career. Dawson testified that he has suffered from depression his entire life, Dawson Dep. 106:11-19, that he first noticed his familial hand tremor in the 1960s, id. 75:1-10, and that he started abusing alcohol in the 1970s while in medical school, id. 117:8-12. Dawson's alcohol abuse was most severe in the period between 1985 and 1989, but he was able to continue to practice medicine in Iowa during this time. Id. 123:3–124:11. During the fifteen years before beginning alcohol abuse treatment in 1999, Dawson's depression was at its worst, but again he was able to continue to practice medicine. Id. 126:12-25. Despite having his hand tremor for about fifty years, Dawson has not received any medical treatment for this condition. See e.g., id. 81:10-25. For all these reasons,

Dawson has failed to show that his claimed total disability was caused by any of these "sicknesses."

Additionally, the record reflects that Dawson was able to practice medicine during the time of his claimed total disability. In 2001, the year after Dawson claims his total disability began, he was employed and performed five insurance physicals in Rochester, Minnesota, before voluntarily resigning. Id. 33:4–36:3. Dawson admits that he was able to perform all of the duties for this job, including taking patient histories, performing physical examinations, doing EKGs, and drawing blood. Id. 35:2-15. Dawson applied to several other medical positions and was rejected for lack of medical malpractice insurance or lack of board certification, not because of his inability to perform the tasks. See, e.g., id. 49:13-17. Instead, the record reflects that Dawson voluntarily chose not to renew his medical license and has voluntarily chosen to work in other fields, including as an assembler at IBM and as a self-employed antique dealer. Accordingly, even viewed in the light most favorable to Dawson, the record does not establish a total disability. Dawson has failed to show under the Ryan standard that he was unable to "perform the substantial and material parts . . . in the customary and usual manner," 450 N.W.2d at 130 (citations omitted), and because he has been able to engage in his past occupation he has failed to establish total disability.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Northwestern's Motion for Summary Judgment [Docket No. 8] is **GRANTED** and all claims are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 12, 2011.